**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIGITAL SIN, INC. ) | |
| 21345 Lassen St. ) | |
| Chatsworth, CA 91311 ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | Civil Action 1:12-cv-00126-AJN |
| ) | |
| DOES 1 – 176 ) | |
| ) | |
|     Defendants. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION OF THE
MOTIONS TO SEVER AND VACATE SUBPOENA AND QUASH SUBPOENA AND
FOR A PROTECTIVE ORDER SUBMITTED BY UNKNOWN JOHN DOE
[Document 7]**

1

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Plaintiff Properly Joined the Individual Defendants Because the Alleged Acts Arise out of the Same Transaction, Occurrence, or Series of Transactions ……………………………… | 6 |
| II. | John Doe Lacks Standing to Challenge the Subpoena ……………… | 12 |
| III. | This Subpoena Should Not Be Quashed …………………………… | 14 |
| IV. | Conclusion ………………………………………………………... | 17 |

**TABLE OF AUTHORITIES**

*Cases*

*Arista Records, LLC v. Does 1-4,* 589 F.Supp.2d 151 (D.Conn. 2008) ………… 14

*Armor Screen Corp. v. Storm Catcher, Inc.*, 2008 WL 5049277, at *2 (S.D. Fla. Nov. 25, 2008)…………………………………………………… 12

*BMG Music v. Does 1-203*, No. Civ.A. 04-650 (E.D. Pa. Apr. 2, 2004)………… 9

*Boy Racer, Inc. v. Does 1-60*, Case No. 3:11-cv-01738 (N.D. Cal. August 19, 2011) ……………………………………………… 9, 15

*Call of the Wild Movie, LLC v. Does 1-1062*, 770 F. Supp. 2d 332, 342-32 (D.D.C. 2011) …………………………………………………………… 8, 14, 17

*First Time Videos*, 2011 WL 4079177, at *1 (S.D. Ind. Sept. 13, 2011)………… 14

*Guest v. Leis,* 255 F. 3d 325 (6th Cir. 2001) …………………………………… 14

*In re Alexander Grant Co. Litig.*, 820 F.2d 352, 357 (11th Cir. 1987)………….. 16

*Laface Records, LLC v. Does 1-38*, 07-cv-298, 2008 U.S. Dist. LEXIS 14544 (E.D.N.C. 2008) ………………………………… 9

*Liberty Media Holdings*, 2011 WL 5161453, at *7 (D. Mass. Oct 31, 2011)…… 14, 16

*London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008) 11, 16

*Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ………….. 7

*Pensacola Firefighters' Relief Pension Fund Bd. Of Trs. v. Merrill Lynch Pierce*, 2011 WL 3512180, at *2 (N.D. Fla. July 7, 2011)……………………………... 16

*Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008)...... 16

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ................. 7

*United States v. Simons,* 206 F.3d 392 (4th Cir., 2000) ........................... 12

*Voltage Pictures, LLC v. Does 1-5000*, 2011 U.S. Dist. LEXIS 50787
(D.D.C. May 12, 2011) ................................................................ 11, 12, 11

*VPR Internationale v. Does 1-1017*, 11-cv-02068 (C.D. Illinois 2011) ........... 10

*Rules and Statutes*

17 U.S.C. Section 504 ...................................................................... 8, 13
Federal Rule 20(a)(2) ...................................................................... 5, 7
Fed.R.Civ.P. 26(c) ......................................................................... 14
Fed.R.Civ.P. 45(c)(3)(B) ................................................................ 11

## EXHIBITS

Revised Technology Technology Declaration of John Nicolini (different from the original

Technology Declaration filed with the Complaint and the discovery motion) and Exhibits.

Plaintiff filed a Complaint against John Does who traded the *identical file* of Plaintiff's copyrighted work without authorization through a file-swapping network ("Peer-to-Peer" or "P2P" network). All John Does reside in New York.

**This John Doe May be an Interloper who is unrelated to the Present Case, as he does not state an IP address or Doe Number**

An unknown John Doe filed Motions to Sever, Vacate and Quash the Subpoena and for Protective Order. The unknown John Doe used a template for his Motion that is circulating in a few different mutations, which has been submitted in other copyright enforcement cases such as *Patrick Collins, Inc. v. John Does 1-18*, 11-cv-07252-MSG (E.D. Pa. 2012), and *Patrick Collins, Inc. v. Does 1-26*, 11-cv-01656-CMA-MJW (D. Colorado 2012).

Unless the Court has further identifying information on record, it seems that this John Doe is an interloper who is not part of this case but simply wishes to disrupt the proceedings. It happens quite often in this type of copyright case that opponents of copyright enforcement submit such motions or other documents ("torpedoes"). *See* http://dietrolldie.com/category/torpedo/. Another popular template that is sent in to courts by unrelated individuals is the "Omnibus Motion to Quash" model, which frequently appears in these types of cases.

**This John Doe used a Template that was written for other Cases that were differently structured, and filed by law firms unrelated to the present law firm**

All of the cases cited by the unknown John Doe are inapposite because none of the cases is based on the structure of the present. The unknown John Doe used a template and thus overlooks some crucial distinctions, including that (a) the Does in this case all traded not just the same Motion Picture, but the exact same file as identified by the Hash Mark. Plaintiff

specifically pled, and provided support, for the allegation that all Doe Defendants engaged in related transactions because all traded precisely the same file; (b) all Defendants reside in New York; and (c) the cases cited by John Doe in support of his Motion can easily be distinguished on the facts, as they all concern cases where (i) Defendants merely committed the same or similar offenses but did not distribute the exact same file; and/or (ii) Defendants were likely not subject to the jurisdiction of the Court by virtue of their residence elsewhere; and/or (iii) the case involved multiple copyrighted works.

***This John Doe makes many gratuitous statements that do not really matter but should be responded to***

This unknown John Doe makes many statements throughout the motions that do not have relevance but are inserted to discredit the case. They include:

(1) In his introduction, the unknown John Doe lumps all plaintiffs and all law firms in these types of copyright infringement cases together an alleges that the Plaintiff (presumably meaning this law firm) has no interest in actually litigating any of these cases. That is already contradicted by the fact that Plaintiff filed this Opposition. In fact, this law firm responds to each and every motion. This law firm's enforcement efforts are widely publicized on websites of opponents of copyright infringement. The website dietrolldie follows and publicizes every step and motion of this law firm's case against in individual, currently pending in the District of Columbia (*Third Degree Films, Inc. v. Zwarycz, 11-cv-1833-BAH*).

(2) John Doe refers to the software company that tracked the John Does, Copyright Enforcement Group (CEG), and claims that the Technology Declaration provided with the Complaint that explains the underlying technology is unreliable because of the

"undisclosed nature of CEG's compensation." *Motion, pages 17 et seq*. The Technology Declaration provided with the Complaint serves to explain the underlying efforts that were undertaken to identify the John Does. The manner of compensation is irrelevant.

John Doe then refers to an unrelated study indicating that the tracking data of other software companies has led to DMCA "takedown notices" being sent to computer devices that were unrelated to copyright infringement. That study does not related to data provided by CEG and is thus completely irrelevant.

The unknown John Doe claims that (1) Defendants should be severed due to improper joinder; and (2) The Subpoena should be quashed and/or protective order should be issued.

The unknown John Doe's Motions should be denied.

## I. **Plaintiff Properly Joined the Defendants Because the Alleged Acts Arise out of the Same Transaction, Occurrence, or Series of Transactions and Occurrences**

The unknown John Doe claims that one cannot "bind together" the defendants. Plaintiff's joinder arguments are based on the facts that (i) *all John Does traded the same identical file of a single motion picture*; (ii) *through torrent software that requires the simultaneous trading of the file with other participants*; (iii) *during a limited period of time*; and (iv) *all John Does are New York residents*. In addition, the website of BitTorrent developers, www.bittorrent.org, express states that the purpose of torrent software is "collaborative distribution." *See Revised Technology Technology Declaration of John Nicolini (different from the Original Technology Declaration filed with the Complaint and the discovery motion) and Exhibits.*

Permissive joinder is governed by Federal Rule of Civil Procedure 20, which provides that: "Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same

transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Many courts have determined that all "logically related" events underlying a legal cause of action are generally considered as comprising a transaction or occurrence. *See Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). The Court may sever improperly joined parties at any time.  However, "the impulse is toward the broadest possible scope of action consistent with fairness to the parties and joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

### *Plaintiff Alleged Sufficient Facts for Permissive Joinder*

Applying the two requirements for permissive joinder under Federal Rule 20(a)(2) to the present case, at this procedural juncture, joinder of the Doe Defendants is proper:  First, permissive joinder expects that the claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).  The unknown John Doe argues that Plaintiff is joining numerous individuals without alleging that the claims arose from a single transaction or a series of closely related transactions.  That is not true. Both the *Complaint* (paras. 7, 8, 15, 16) and the original *Declaration of Jon Nicolini* (paras. 6-22) attest that the transactions are in fact related.

Plaintiff alleges that each Defendant peer member participated in the same "swarm" of BitTorrent users that illegally uploaded and downloaded Plaintiff's copyrighted movie. *See Complaint* paras. 4, 5, 7, 8. Additionally, Plaintiff alleges that each Defendant directly interacted and communicated with other members of that swarm. *Complaint* paras. 7, 8; Original *Nicolini Declaration* paras. 7, 22. Plaintiff further alleges that once a Defendant has downloaded the full copyrighted work, the Defendant becomes known as an "additional seed" and continues to

distribute the torrent file containing the copyrighted work. *Complaint* paras. 7, 8; Original *Nicolini Declaration* paras. 6, 7. Finally, Plaintiff alleges (and provides support for its allegation) that it has only sued Defendants in the exact same swarm, *i.e.*, Defendants who participated in downloading or transmitting the same unique version of Plaintiff's movie. *Complaint* para. 8, Original *Nicolini Declaration* paras. 18, 22. Plaintiff explains that such identification is possible through the use of forensic software that identifies the Doe Defendants' IP Addresses as having a unique cryptographic "Hash Mark" which serves as a digital finger print. *Complaint* para. 8, Original *Nicolini Declaration* para. 8. Therefore, Plaintiff has sufficiently alleged that the Doe Defendants used the same file-sharing device at around the same time to copy the exact identical file of Plaintiff's Motion Picture. Furthermore, Plaintiff has alleged not only that each Doe played a role in the collaborative effort of distributing Plaintiff's movie, but that each of the Doe Defendants may have directly facilitated the download of Plaintiff's Motion Picture by another of the Doe Defendants. *Complaint* para. 8, 16; Original *Nicolini Declaration* para. 7. *See Call of the Wild Movie*, 770 F. Supp. 2d 332, 343 (D.D.C. 2011) (finding joinder proper where "[e]ach putative defendant is a possible source for the plaintiffs' motion pictures, and may be responsible for distributing the motion pictures to other putative defendants"). Defendants may be able to rebut these allegations once their identities are known, but at this stage Plaintiff has adequately satisfied the first prong of permissive joinder.

Second, for permissive joinder, Federal Rule 20(a)(2)(B), requires that Plaintiff's claims against Defendants contain common questions of law or fact. Plaintiff meets this requirement in the present case because it asserts identical claims against the Doe Defendants. Even though the Doe Defendants may possibly present different factual issues at a later stage in the litigation, the commonality of legal claims at this time supports joinder.

***The Cases Cited By Defendant in Support of the Motion Involve Very Different Circumstances and Allegations***

The cases that the unknown John Doe prominently cites in support can be easily distinguished on the facts from the present case. For example: *BMG Music v. Does 1-203*, No. Civ.A. 04-650 (E.D. Pa. Apr. 2, 2004), involved 203 Does from different parts of the U.S. who each had posted between 5 and 10 different songs on the internet. Personal jurisdiction was based on the fact that such illegally copied works can be downloaded in every jurisdiction of the U.S., and based on the fact that their common internet service provider Comcast is located there. In comparison, the present case involves all New York residents who traded the exact same, single file as identified by the Hash Mark (not a variety of copyrighted works).

*Boy Racer, Inc. v. Does 1-60*, Case No. 3:11-cv-01738 (N.D. Cal. 2011), involved the illegal download of a same Motion Picture through the same file-sharing mechanism. The plaintiff in that case failed to allege that the defendants traded the exact same file or acted in concert. Exhibit A to the Complaint in that case fails to identify the file or any other relation among the Defendants.  Also, it appears that the plaintiff lumped together Doe Defendants from different parts of the U.S. simply because they were somehow connected to illegal file sharing in California. In comparison, the present case involves trading of the same exact file, as identified by the Hash Mark and listed in Exhibit A to the Complaint. All Doe Defendants are located in New York.

*Laface Records, LLC v. Does 1-38*, 07-cv-298, 2008 U.S.Dist. LEXIS 14544 (E.D.N.C. Feb. 27, 2008). This case involved multiple record companies sueing multiple John Doe Defendants for illegally posting copies of multiple songs on the internet.  The only connection among the John Does was the use of the same ISP and the same P2P filesharing network.

*VPR Internationale v. Does 1-1017*, No. 11-cv-02068 (C.D. Illinois 2011), is a class action by a foreign copyright owner against a multitude of alleged infringers who infringed upon one or more unidentified copyrighted works. Plaintiff did not name the multiple copyrighted works at issue, and there was no allegation in the complaint that the alleged infringers traded the identical file (as identified by the hash mark). The judge in that case did not grant discovery because the request was "a perversion of the purpose and intent of Fed.R.Civ.P. 23" [class actions]. *See order of March 9, 2011, id.*

The plaintiffs in each of those cases failed to contend that the Doe defendants acted in concert with each other.  Here, all the Doe defendants are related to each other. The following allegation is in paragraph 16 of the Complaint:

16.    Each Defendant has acted in cooperation with the other Defendants by agreeing to provide, and actually providing, on a P2P network an infringing reproduction of at least substantial portions of Plaintiff's copyrighted Motion Picture, in anticipation of the other Defendants doing likewise with respect to that work and/or other works. Further in this regard, all the Defendants have engaged in a related series of transactions to engage in unlawful reproduction and distribution of Plaintiff's copyrighted Motion Picture.

This allegation is supported by the testimony in the *Nicolini Declaration*, despite the misstated Plaintiffs. As explained by Mr. Nicolini, the accused Doe Defendants act, and must act, cooperatively to distribute unlawful copies of the copyrighted work, and "all the Doe defendants listed in **Exhibit A** joined the same swarm." Nicolini Declaration, paras. 7 & 22.

The factual issues are not expected to be very different. Copyright infringement is determined without regard to the intent or the state of mind of the infringer; "innocent" infringement is infringement nonetheless. The innocence or willfulness of the infringing activity may be relevant with regard to the award of statutory damages. *See* 17 U.S.C. § 504(c).

The interests of judicial efficiency weigh in favor of joining these claims, and doing so may also be beneficial for the Doe Defendants. *See London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008) (finding that consolidating a group of similar cases "ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised."). Joinder serves the Plaintiff's interests by providing it with an effective tool to protect its motion picture from copyright infringement.

In a "swarm" copyright infringement case decided by Judge Howell, namely *Voltage Pictures, LLC v. Does 1-5000*, 2011 U.S. Dist. LEXIS 50787 (D.D.C. May 12, 2011), the court distinguishes the cases that ordered severance, and notes that BitTorrent file sharing uses a "swarm" of infringers. In that case, the court denied motions to quash by several defendants. Judge Howell explained, at 2011 U.S. Dist. LEXIS 50787, at [*35]-[*39], as follows (emphasis added):

Some courts in other jurisdictions have granted motions by putative defendants for severance in analogous copyright infringement cases against unknown users of peer-to-peer file-sharing programs for failure to meet the 'same transaction or occurrence test' in Rule 20(a)(2). Those courts have been confronted with bare allegations that putative defendants used the same peer-to-peer network to infringe copyrighted works and found those allegations were insufficient for joinder. See, e.g., IO Grp., Inc. v. Does 1-19, No. 10-03851, 2010 WL 5071605, at *8-12 (N.D. Cal. Dec. 7, 2010); Arista Records, LLC v. Does 1-11, No. 07-cv-2828, 2008 WL 4823160, at *6 (N.D. Ohio Nov. 3, 2008) ('merely alleging that the Doe Defendants all used the same ISP and file-sharing network to conduct copyright infringement without asserting that they acted in concert was not enough to satisfy the same series of transactions requirement under the Federal Rules.'); LaFace Records, LLC v. Does 1-38, No. 5:07-cv-298, 2008 WL 544992, at *3 (E.D. N.C. Feb. 27, 2008) (severing putative defendants in file-sharing case not involving BitTorrent technology, noting that 'other courts have commonly held that where there is no assertion that multiple defendants have acted in concert, joinder is improper.'); Interscope Records v. Does 1-25, No. 6:04-cv-197, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (adopting Mag. J. Report and Recommendation at Interscope Records v. Does 1-25, No. 6:04-cv-197, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004)). That is not the case here.

The plaintiff has provided detailed allegations about how the BitTorrent technology differs from other peer-to-peer file-sharing programs and necessarily engages many users simultaneously or

sequentially to operate. See Columbia Pictures Indus. v. Fung, No. 06-5578, 2009 U.S. Dist. LEXIS 122661, at *7 (C.D. Cal. Dec. 21, 2009) (*BitTorrent 'is unique from that of previous [P2P] systems such as Napster and Grokster. Rather than downloading a file from an individual user, [BitTorrent users download] from a number of host computers that possess the file simultaneously. . . . The BitTorrent client application simultaneously downloads the pieces of the content file from as many users as are available at the time of the request, and then reassembles the content file on the requesting computer when the download is complete. Once a user downloads a given content file, he also becomes a source for future requests and downloads.'*). Specifically, BitTorrent creates a 'swarm' in which 'each additional user becomes a part of the network from where the file can be downloaded . . . [U]nlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from each user who has already downloaded the file that together comprises the whole.' Second Am. Compl., ¶ 3.

At least one court has not been persuaded that allegations of copyright infringement by users of BitTorrent satisfy the requirement of Rule 20. See, e.g., Lightspeed v. Does 1-1000, No. 10-cv-5604, 2011 U.S. Dist. LEXIS 35392, at *4-7 (N.D. Ill. Mar. 31, 2011) (finding that Doe defendants using BitTorrent technology were misjoined on the basis that the putative defendants were not involved in the 'same transaction, occurrence, or series of transactions or occurrence' under FED. R. CIV. P. 20(a)(2)(A)); Millennium TGA Inc. v. Does 1-800, No. 10-cv-5603, 2011 U.S. Dist. LEXIS 35406, at *3-5 (N.D. Ill. Mar. 31, 2011) (same). In those cases, the court did not discuss the precise nature of the BitTorrent technology, which enables users to contribute to each other's infringing activity of the same work as part of a 'swarm.' In any event, by contrast to the instant claim of infringement of a single copyrighted work by the putative defendants, the plaintiffs in Lightspeed and Millennium TGA Inc. alleged infringement of multiple works, a factor that may undermine the requisite showing of concerted activity to support joinder.

Here, as in *Voltage Pictures*, Plaintiff alleges that the Doe Defendants have acted in

cooperation with each other (i.e., in concert), and Plaintiff's expert, Nicolini, explained. See

*Declaration of Jon Nicolini*, paras. 6 and 22.

6.     P2P networks distribute infringing copies of motion pictures (and works in other forms such as music and books) with file sharing software such as BitTorrent as follows:  The process begins with one user accessing the Internet through an Internet Service Provider ("ISP") and intentionally making a digital file of the work available on the Internet to the public from his or her computer.  This first file is often referred to as the first "seed."  I will refer to the person making this seed available as the "original seeder."  Persons seeking to download such a work also access the Internet through an ISP (which may or may not be the same ISP as used by the original seeder) and seek out the work on a P2P network.  With the availability of the seed, other users, who are referred to as "peers," access the Internet and request the file (by searching for its title or even searching for the torrent's "hash" - described below) and engage the  original seeder and/or each other in a group, sometimes referred to as a "swarm," and begin downloading the seed file.  In turn, as each peer receives portions of the seed, most often that peer makes those portions available to other peers in the swarm.  Therefore, each peer in the swarm is at least

copying and is usually distributing, as a follow-on seeder, copyrighted material at the same time. This also means that the participants engage in a series of related transactions. Of the over 20,000 infringers tracked in connection with several cases currently pending, at least 95% of the Doe defendants were uploading (i.e., distributing) illegal copies of our clients' motion pictures at the moment indicated by the Timestamp in the respective Exhibit A appended to each complaint, which is also true for this case. In P2P networks, the infringement may continue even after the original seeder has gone completely offline. Any BitTorrent client may be used to join a swarm. As more peers join a swarm at any one instant, they obtain the content at even greater speeds because of the increasing number of peers simultaneously offering the content as seeders themselves for unlawful distribution. As time goes on, the size of the swarm varies, yet it may endure for a long period, with some swarms enduring for 6 months to well over a year depending on the popularity of a particular motion picture. As a result, the original seed file becomes unlawfully duplicated multiple times by multiple parties, with a potentially exponential increase in the number of illegal copies of any copyrighted work. With respect to any particular swarm, the hash (an alphanumeric representation of a digital file) associated with the copied file's torrent file remains the same. […]

22.    With respect to Plaintiff's copyrighted motion picture named in the Complaint, CEG performed the steps described in paragraphs 11-21 above. In summary, each of the computers having the IP addresses and time stamps listed in **Exhibit A** of the Third Degree Films, Inc. Complaint made a digital file copy of at least a substantial portion of Plaintiff's Work, and, without authorization, made such file available for download by others on a P2P network. As indicated above, all of the infringers identified as "Doe" defendants in the Third Degree Films, Inc. Complaint used BitTorrent software. Further, the hashes associated with the torrent files on the computers having the IP addresses and time stamps listed in **Exhibit A** are all identical to each other, that is, they all have the same hash. This demonstrates that all the Doe defendants listed in **Exhibit A** joined the same swarm and engaged in a series of related transactions.

Thus, joinder is proper and the Defendant should not be severed and dismissed on that basis. *See also Revised Technology Technology Declaration of John Nicolini (different from the Original Technology Declaration filed with the Complaint and the discovery motion) and Exhibits.*

## II. John Doe Lacks Standing to Challenge the Subpoena

A party to a lawsuit lacks standing to object to a subpoena served on a non-party, unless the party objects to the subpoena on the grounds of privilege, proprietary interest or privacy interest in the subpoenaed matter. *See Fed.R.Civ.P. 45*(c)(3)(B). *See Armor Screen Corp. v. Storm Catcher, Inc.,* 2008 WL 5049277, at *2 (S.D. Fla. Nov. 25, 2008). Internet subscribers do

not have a proprietary interest or an expectation of privacy in their subscriber information because they have already conveyed such information to their Internet Service Providers (ISPs). *See Guest v. Leis,* 255 F. 3d 325 (6th Cir. 2001); *United States v. Simons,* 206 F.3d 392 (4th Cir., 2000).  The Doe Defendants exposed their IP addresses to the public by sharing the Motion Picture at issue.  The torrent software exposes the IP address of the infringer, as explained in the Complaint and the original *Declaration of Jon Nicolini.*

The only information sought through the Subpoena at issue is the Doe defendants' names, addresses, e-mail addresses and Media Access Control (MAC) numbers. "[A]n individual has no protected privacy interest in their name, address, phone number, e-mail address, or Media Access Control address when there is an allegation of copyright infringement." *First Time Videos*, 2011 WL 4079177, at *1 (S.D. Ind. Sept. 13, 2011). Thus, whatever privacy interest the Doe Defendant may have in his contact information is overcome by Plaintiff's need to identify and pursue litigation against the purported infringer.  *Arista Records LLC v. Does 1-19,* 551 F. Supp. 2d 1, 8-9 (D.D.C. 2008); *Liberty Media Holdings*, 2011 WL 5161453, at *7 (D. Mass. Oct 31, 2011).

The unknown John Doe has failed to show any sufficient privacy interest that would serve to confer standing upon him to challenge the Subpoena.

### III. <u>This Court Should Not Quash the Subpoena</u>

The unknown John Doe then argues that the subpoena must be quashed because it "does not identify the specific identity" of the alleged infringer and the Subpoena "seeks to discover protected information and violates the United States Constitution."

The unknown John Doe is correct in stating that the IP address identifies the subscriber to the ISP and who controls the internet connection that was used for the illegal movie download,

but not necessarily the person who committed the copyright infringement. The unknown John

Doe cites the Northern District of California case *Boy Racer v. Does 1-52*, No. 11-CV-2329-PSG

(N.D. Cal. Sept. 13, 2011) in support.  *Boy Racer* is inapposite to the present case.  The plaintiff

in that case failed to allege that the defendants traded the exact same file or acted in concert.

Exhibit A to the Complaint in that case fails to identify the file or any other relation among the

Defendants.  Also, it appears that Plaintiff in that case lumped together Doe Defendants from

different parts of the U.S. simply because they were somehow connected to illegal file sharing in

California.  In comparison, the present case involves trading of the same exact file, as identified

by the Hash Mark and listed in Exhibit A to the Complaint. All Doe Defendants are located in

New York.

Plaintiff agrees that it is possible that some other household member may have

committed the copyright infringement. That is a matter for discovery to determine the actual

infringer.

Defendant seems to misunderstand the nature of copyright law. There may be

contributory or vicarious infringement. Copyright infringement is determined without regard to

the intent or the state of mind of the infringer; "innocent" infringement is infringement

nonetheless. The innocence or willfulness of the infringing activity may be relevant with regard

to the award of statutory damages. *See* 17 U.S.C. § 504(c).

Also, Defendant should know that one can call Plaintiff's counsel to review a possible

defense, and Plaintiff's counsel will actually review the matter.

In any case, a protective order is not necessary, as Plaintiff has not requested the

telephone numbers of John Does, and does not object to John Does filing motions anonymously.

For good cause shown, Federal Rule of Civil Procedure 26 permits a court to "issue an order to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…." *See* Fed. R. Civ. P. 26(c).  "A district court has broad discretion when fashioning protective orders," *see In re Alexander Grant Co. Litig.*, 820 F.2d 352, 357 (11th Cir. 1987), and the moving party has the burden of showing a particular need for protection under Rule 26(c), *see Pensacola Firefighters' Relief Pension Fund Bd. Of Trs. v. Merrill Lynch Pierce*, 2011 WL 3512180, at \*2 (N.D. Fla. July 7, 2011).  "Broad allegations of harm, unsubstantiated by specific examples or articulate reasoning, do not satisfy the Rule 26(c) test." *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) (citation omitted).

Also, Plaintiff's counsel does respect the John Does' privacy: John Does can communicate anonymously with Plaintiff's counsel; Plaintiff's counsel does review the matter in individual cases and all dismissals are by IP address and Doe number only.

In addition, the First Amendment interests of the Doe Defendants are minimal in cases of this kind.  As other federal courts have found, individuals who use the Internet to download or distribute copyrighted works are engaged in only a limited exercise of speech and he First Amendment does not necessarily protect such persons' identities from disclosure.  *See Call of the Wild Movie, LLC.*, 770 F. Supp. 2d at 349-54 ; *see also London-Sire Records, Inc.*, 542 F. Supp. 2d at 179 ("the alleged infringers have only a thin First Amendment protection").  Determining whether a litigant may proceed anonymously requires balancing the "litigant's substantial right to privacy" with the "constitutionally embedded presumption of openness in judicial proceedings."  *Liberty Media Holdings*, 2011 WL 5161453, at \*6 (citations omitted).  "[C]ircumstances such as economic harm or mere embarrassment will not suffice to overcome the public's interest in disclosure." *See id.*

Furthermore, it must be noted that an internet file-sharer's First Amendment right to anonymity is exceedingly small and the owner's need for information subpoenaed outweighs Doe Defendant's minimal First Amendment rights to anonymous speech. *See Call of the Wild Movie, LLC*, 770 F. Supp. 2d at 349. Plaintiff's Subpoena seeks only identifying information necessary to proceed with litigation.  Upon balancing the Doe Defendant's First Amendment rights to anonymity and Plaintiff's need for the identifying information, the Court should find that the Plaintiff's need overrides the Defendant's right to use BitTorrent anonymously.

Therefore, the Subpoena should not be quashed.

## IV. CONCLUSION

Based on the above-stated reasons, Plaintiff respectfully requests this Court to deny the Motions submitted by the unknown John Doe.

Unless the Court has further identifying information on record, it seems that this John Doe is a phantom who is not part of this case. It happens quite often in this type of copyright case that opponents of copyright enforcement submit such motions or other documents ("torpedoes"). *See http://dietrolldie.com/category/torpedo/.* A proposed order will be submitted separately.

Respectfully submitted this 5th day of April, 2012.

By:   /s/ Mike Meier
Mike Meier (NY Bar ID NY9295)
The Copyright Law Group, PLLC
4000 Legato Road, Suite 1100
Fairfax, VA 22033
Phone: (888) 407-6770
Fax: (703) 546-4990
Email:
mike.meier.esq@copyrightdefenselawyer.com

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on 5 April 2012, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system.


By:    /s/ Mike Meier
        Mike Meier (NY Bar ID NY9295)
        The Copyright Law Group, PLLC
        4000 Legato Road, Suite 1100
        Fairfax, VA 22033
        Phone: (888) 407-6770
        Fax: (703) 546-4990
        Email:
        mike.meier.esq@copyrightdefenselawyer.com

        ATTORNEY FOR PLAINTIFF

18